When Mr. Ruth was sentenced for a violation of 21 U.S.C. 841b1c and 922g, that's a drive-in violation, and a gun charge. His sentence was enhanced in two ways. There was a Section 851 enhancement, which relied on a prior felony drug offense, and there was a guidelines enhancement, which caused him to be a career offender, also relying on that same prior conviction, which was termed a conviction for violating 720 ILCS 570, Section 401c2. And we are arguing that that conviction, which is essentially Illinois' cocaine statute, is overbroad for two reasons. One, it's overbroad because Illinois criminalizes the possession and distribution, etc., of positional isomers of cocaine. Now, those specific isomers are not federally controlled substances. It's also overbroad because Illinois permits a conviction under that statute for an analog of cocaine using Illinois' permissive and very generous to the government definition of a cocaine analog. I'll take the two separate enhancements separately because there are different issues. The positional isomers issue, I ran through the history of how that got to be in the Illinois statute in my briefing. And the reason I did is essentially the Illinois General Assembly put it there on purpose. And it's not, as the government terms it, spilled ink in the statute book. Illinois looked at how it wanted to prosecute cocaine cases, and they did not want to have to prove which isomer of cocaine was illegal. And to that end, they basically said, look, any of these three isomers are going to be illegal. At the time, there was something called the isomer defense that defends all over the country we're using, including here. And the General Assembly said, stop trying to argue with us and stop trying to say that you had a positional isomer so you're innocent. The government attacks our position as saying that we are trying to apply our legal imagination to imagine some way that this statute could be prosecuted. Well, first things first, that position comes from the Duane Osalvarez and Moncrief opinions in the Supreme Court. And our position would be that, in fact, no, we're just trying to read the statute as it quite plainly says in black and white. Indeed, it's the government who's trying to impose a legal imagination for a scenario where a defendant in Illinois state court walked in with a bag full of positional isomers of cocaine and somehow ended up not guilty. There are rational reasons for why Illinois put that language in the statute, and I just went through that. They didn't want to have to prove things. They didn't want to have to present these issues to juries or judges and hire experts and get into the deep organic chemistry of every cocaine sample they have. There are also rational reasons why Congress omitted it from the Federal Controlled Substances Act. And specifically, in some of the legislative history cited, it's because Congress didn't feel that it was a problem. Now, that's another way of saying Congress didn't want people going to jail for something they don't think is a problem. This disconnect, this overbreath, could be solved by the government going to either the General Assembly of Illinois or going to Congress and changing it. But this is not the forum for rewriting a statute or somehow introducing some question of fact or fact-finding. Importantly, we also want to emphasize that 401C2 is indivisible, and that really means that the jury instructions specifically in the case law do not differentiate between the different isomers or do not differentiate between a particular cocaine isomer or an analog thereof. What about the government's argument, Justice Cheney, that a positional isomer just doesn't exist? Well, Your Honor, I don't think that they've argued that at all. I think their argument is that it doesn't exist in the illegal drug trade, but it's kind of a strange argument. It's not tested for. That's the only reason that we don't see it, that in Illinois you don't have to test for it, and in federal court they wouldn't test for it because it's not illegal. They're not even prosecuting it. There's no argument that it's not been synthesized in the lab. There's no argument that it's just a fairy dust or something that's just a hypothetical substance. Illinois has acknowledged that it exists, and Illinois has said it's illegal. So I guess that's my response to that is that it is a real thing, and I don't think the government is going to say that it's never been synthesized and that it doesn't actually exist. I believe that De La Torre and Garcia and Elder resolved this case fairly squarely with regards to the 851. With regard to 851, Mr. Ruth's lawyer was specifically asked if he had any arguments as to the section 851 enhancement, and he said no. Why wouldn't that be an intentional waiver as opposed to a forfeiture of that issue? Well, first of all, Your Honor, I was a lawyer, and I can explain that. It was a swing and a miss for me. I really just looked at the fact that there was an 851 and assumed that it had referred to as marijuana conviction. Mistakenly, I don't know why I didn't go back and check and notice that it only referred to the cocaine conviction. Now, more importantly, it's not a waiver because there's no rational reason that I or any lawyer would take the position that they didn't want to challenge an enhancement that raised Mr. Ruth's guidelines and exposed him to an extra 10 years of imprisonment. So there's no strategic choice to – oh, and also doubled Mr. Ruth's supervised release term. There's absolutely no strategic choice to expose your client in that way, and while I'm pretty mortified at the mistake, there's just no reason I would have done it on purpose, Your Honor. So if we do analyze it under plein air, and I've just focused on the 851 enhancement now, Mr. Ruth's sentencing range would have been 151 to 188 months, but he was sentenced well below the low end of that range. How would that impact the substantial rights analysis we would do under a plein air analysis? Well, there are two ways, Your Honor. First of all, he went down – the judge varied downwards several levels in the ultimate sentence, and there's nothing in the case or in the transcript or in the case that suggests that Judge Mim would not have done a similar – I think it was a six or eight-level drop. So there's nothing suggesting that Judge Mim would have gone 108 specifically. He could have imposed a commensurate downward variance, just started from a lower position. Second of all, as I noted, his sentence, the part that includes the supervised release, it was doubled because he had the 851. So in that circumstance, there is a very direct part of his sentence that's been made longer. That's non-discretionary, isn't it, Judge Sykes? That's a mandatory? Yes, Your Honor. It is a mandatory doubling. Now, Judge Mim could have theoretically – I'll agree that he could have theoretically given Mr. Ruth six years in any event, but the floor went up based on the 851 enhancement. But the other impacts of classifying the convictions as both 851 and as guidelines convictions, the only other practical effect was to affect the discretionary decisions of the judge, not mandatory decisions? I suppose his discretion was a practical effect, Your Honor, yes. I would like to get to the issue about the controlled substance offense under the guidelines because I do believe that's a matter of first impression for the court, or for this court at least. Four other circuits have evaluated whether the phrase controlled substance in that specific language in the guidelines means a substance regulated under the Controlled Substances Act. Most recently, in a published opinion, the Second Circuit in Townsend came down quite squarely saying, no, it's got to be a substance in the Controlled Substances Act. They joined the Fifth Circuit, the Ninth Circuit, and the Eighth Circuit. And it's important to recognize, especially the Ninth and the Eighth Circuit there, the Commission has had plenty of opportunity to amend the controlled substance offense definition since those courts decided it as they did. There not being such an amendment, that that should be taken as the Commission, the Sentencing Commission, acquiescing in how courts are reading it. Just to acknowledge that there is slightly competing authority in the Sixth Circuit, in two, actually three, unrelated cases have looked at this issue. Two of the cases came out in opposite directions, and then the third case said, we have competing definitions, and we don't have to decide which one's correct, the Supreme Court hasn't decided it, and we'll do it on a different day. How do we get around the plain language of the career offender enhancement that says controlled substance is defined as an offense under federal or state law? So maybe for the federal aspect, you look to the Controlled Substances Act, assume that's true for purposes of the question, but it also says or state law. Well, Your Honor, one thing, in the Hudson case, this court kind of noted that that little or state law is, and I'm quoting, it said not particularly helpful. But I'd also say that that essentially would eliminate the categorical analysis of this enhancement, and this court just last July, I believe, in United States v. Smith, held that the definition of a controlled substance offense is analyzed under the categorical approach. It doesn't just adopt all 50 states plus Guam and Puerto Rico, et cetera. It's focused on a consistent application, and it's a categorical analysis, Your Honor. And I believe my time may be up. Just a minute. No, you reserved how much time in rebuttal? Three minutes. I thought so. Yes, you've hit your limit for your opening argument. So if you'd like to reserve, that's fine. I will, Your Honor. Thank you. Ms. Boyle. Thank you, Your Honor. Good morning. May it please the court, counsel, my name is Katherine Boyle on behalf of the United States. As the defense counsel has identified, there are two primary overarching issues in this case. First, on plain error review, it is neither clear nor obvious that Mr. Ruth's state cocaine trafficking conviction is not a felony drug offense within the definition of Section 80244 for the purpose of enhancing the statutory sentencing range. And then second, the district court properly determined that Mr. Ruth's cocaine trafficking conviction is a controlled substance offense under Section 4B1.2 of the guidelines, and Mr. Ruth should therefore merit the clear offender designation. To follow defense counsel, I'd like to first turn to whether Mr. Ruth's prior conviction qualifies as a felony drug offense under Section 80244. First, Mr. Ruth has failed to demonstrate that the Illinois definition of cocaine does not substantially correspond to the federal definition. Mr. Ruth has argued in this case that because the Illinois definitions of narcotic drugs and cocaine include positional isomers, the relevant state statutes are broader than the federal definition of narcotic drugs, which does not include positional isomers. He is wrong from both legal and scientific standpoints. Ms. Boyle, if I could jump in. This is Judge Saney first. You are using the substantial correspondence language, but how does that still apply here to the conduct-based method as opposed to the generic offense method after the Supreme Court's recent decision? And Shuler, which I know came down after this case, but Shuler, the Supreme Court made pretty clear that the substantially correspondence test does not apply to conduct-based, that it is a generic offense or generic-based method test. Well, Your Honor, we don't believe Shuler undermines the applicability of a substantial correspondence approach in this case. In Shuler, this court held that to determine whether a person incurred a previous serious drug offense subject to the Armed Career Criminal Act, the question should be whether the elements of the offense at issue necessarily entailed one of the types of conduct described in the statute. And here the issue is whether the elements of the state conviction relate to narcotic drugs. We believe the substantial correspondence test is still instructive here. When comparing the elements of a state conviction to the elements of a generic offense, the substantial correspondence test is employed to avoid a situation where, as the Supreme Court has said, legal imagination is applied to the state offense. In other words, there must be a realistic probability, not a theoretical possibility, that the state would apply its statute to conduct that falls outside the federal definition. And we believe that same analysis should apply when the court is deciding whether the elements of a state conviction necessarily entail one of the types of conduct described in the statute. There is no reason to determine a prior conviction doesn't qualify because the state definition lists the type of isomer that doesn't even exist in the illegal drug trade. So we believe that this is still an instructive way to look at this because for the generic offense you're looking at, whether the elements exactly match, you are allowed a small amount of leeway to make sure that you're not including offenses that basically don't exist. And we think here also that there should be an allowance for these sort of slight modifications when there is no evidence that such convictions, a conviction for positional isomers, for example, exists in real life. So do you disagree that Shuler limited the substantial correspondence test to the generic offenses as opposed to the conduct-based method? Well, we think the logic of the substantial correspondence test should still be applied in this instance. Despite the Supreme Court's language in Shuler? Or are you arguing that Shuler doesn't limit the substantial correspondence test to the generic-based method? Your Honor, we think that Shuler potentially leaves an opening for the same sort of analysis to be applied in this situation. Second of all, there is no basis for... This is just like, what's the logic of that, though? The whole generic offense analysis is so different when we're in the domain of an actual defined federal crime and we're required to compare the state conviction to a defined federal crime that has a statutory set of elements, rather than a made-up federal crime in the generic sense when we're in the domain of generic analysis. Yes, Your Honor. We believe that the connecting issue here is the importance of discussing... For example, here, we're looking at the state conviction relate to conduct involving narcotic drugs. I think the same logic that applies to whether the elements match when you're looking at the generic offense applies here as well. Because when we are looking at whether the state conviction involves conduct that relates to narcotic drugs, we can look... You should be able to look and say, because positional items don't exist in the illegal drug trade, this state statute should not be deemed overbroad. It's the same sort of idea, this sort of legal imagination should not be allowed to apply just because conduct is being examined. Because the evidence in this case is that conduct, that type of conduct, does not exist in the illegal drug trade. Yes, and that argument makes a great deal of sense as a common sense policy matter. But we're being told by the Supreme Court to compare elements. Yes, Your Honor. If there's a match, then it counts. If there's not a match and the state statute is overbroad or goes beyond what the federal law prohibits, then the conviction doesn't count. I mean, none of this makes any sense as a policy matter. We've gotten so deep in the weeds on all of these distinctions, divisibility, indivisibility, generic crimes, defined crimes, elements, means. Anyone looking at this from a common sense standpoint would be scratching his or her head. It doesn't make any sense as a common sense policy matter, but these are the instructions we're being given, so we have to live within them. So you do have to fit your argument within the doctrine that the Supreme Court is giving us. Yes, although I also think that the strict test for whether a generic offense matches the elements is whether it matches. And then later on, the court went on to distinguish this exception for theoretical, so we would hope for the same here. But I understand, Your Honor. We also just want to note that there is no basis to conclude that positionalized smiths of cocaine do exist in the illegal drug trade. Evidence was presented in this case that a DEA expert did not encounter positionalized smiths of cocaine in any of the 50,000 exhibits he had analyzed. It's also important that Congress included only geometric and optical isomers in its definition and not positionalized smiths, because only those isomers had been observed as a problem in the drug trade. But Ms. Boyle, the state legislature specifically included them in the statute. There was certainly a conscious decision to do that, looking at other statutes where they did not include positional isomers. And as your opponent brought out, it's not an illegal drug in the federal system, so it's logical that the DEA agent wouldn't test for it or see it because it's not something that's illegal or that they test for. So how can we conclude, just based on that affidavit, which is the only evidence in the record on this, that positional isomers of cocaine don't exist at all in the drug trade? His affidavit did not go that far. He did not say positional isomers of cocaine do not exist in the drug trade. He just said that he has not observed positional isomers in all the testing that he's done, which he may not be testing for them. Sarah, I'd like to bring up two points in response to your question. First, the Illinois state legislature, as defense counsel noted in his argument, included positional isomers in their definition because they were concerned about this isomer defense. I think it's important here that the Illinois state legislature did not include isomers in their definition because they thought there was any realistic probability ever of these positional isomers being prosecuted under state law. So that's important to note, I believe, in terms of why the state legislature has this in there. It was not because they anticipated gaining convictions on positional isomer cocaine offenses. I understand your point that the DEA affidavit does not go so far to say that the positional isomers of cocaine did not exist. The government has been, this is not in the record, but the government has been working with additional experts and hopes to present additional evidence in other cases that will provide even more information on that. Although I do think also it is important when we're looking at the history of the congressional statute that there's an acknowledgment in the record there that positional isomers are not presenting a problem in the illegal drug trade, which does support why the DEA agent would not have been encountering positional isomers in any of the affidavits we analyzed. And I also want to note here that in Jimenez-Ibarra, the Fifth Circuit concluded on plain air review that the statute should not be deemed overbroad merely due to the inclusion of virtually nonexistent, and irrelevant isomer. And that's important here because we are on plain air review also. So the district court at that time would have been able to see that the Fifth Circuit made this decision, and we don't believe for that reason it was a clear error for the district court in this case to arrive at a similar conclusion. How do you get around our opinion in delatore? Are you saying this is factually different or that was wrongly decided? It's true that in delatore, this court determined that a similar argument by the government, which related to isomer forms in Indiana's and the federal government's respective definitions of methamphetamine, were theoretical challenges. And essentially in that case, the Indiana statute was categorically broader than the federal definition. But in that case, the court did acknowledge in a footnote that it took no position on the scientific merits of our argument, and that the court expressly decided not to limit the government's ability to present such an argument in future proceedings. So we believe delatore does leave open some analysis here as to whether or not these traditional isomers even exist in any real way. And we also believe in this case, as opposed to delatore, in which the isomer discussion, although very fulsome, was also partially dictated because the Indiana statute was overbroad on two other substances, I believe, as well. And that was where the decision centered. But we believe delatore left open the position for the government to bring more evidence. And we also believe there's more evidence in this case than there was in the delatore record as to whether these isomers existed in the illegal drug trade. We'd also like to note that in any case, Mr. Roo's conviction here is related to narcotic drugs. Section 802.44, he's just afraid, prohibits or restricts conduct relating to, and that supports the conclusion that Mr. Roo's 2006 offense is a felony drug offense. 802.44 doesn't ask whether a state law offense is completely equivalent to or subsumed by the elements of a particular crime. Instead, the court applying Section 802.44 simply determines on a categorical basis whether the predicate offense was in violation of any law that prohibits or restricts conduct relating to narcotic drugs. You have one minute left, Ms. Bloom. Thank you, Your Honor. I will just try to quickly sum up my argument. In turning to the issue of controlled substance analog, we would note that we believe the differences between the state and federal definitions of analog are not material. The Eighth Circuit has come to that same conclusion in its Jones decision. And we also would say that even if the differences are material, the phrase cocaine or an analog thereof would present alternative elements. For career offender, as was discussed with defense counsel, the government's position is that the plain meaning of the term controlled substance should apply. We believe that is mandated partly by this court's decision in Hudson. When you look at the fact that Section 4B.1.2 neither cross-references the federal schedule nor invites the court to envision what substances should be controlled. All right. Thank you very much. Thank you, Your Honor. Thank you, Your Honor. So to be clear about some things the government said, the government is asking this court to engage in judicial fact-finding. And they're specifically asking this court to find that Mr. Ruth possessed a substance, an optical or geometric isomer of cocaine that is illegal under federal law. And they're saying, well, we know that because it doesn't exist in the drug trade according to us. But there is nothing in the record of conviction from Champaign County that suggests anybody made any finding regarding positional isomers of cocaine. With regard to the government's comment on the relating to language, the phrase relating to in 802.44 modifies the word immediately preceding it. That's conduct. It doesn't modify the defined terms immediately following it. And that defined term is narcotic drugs. And it is then defined in 802.17. And once again, Congress has omitted positional isomers of cocaine. I would point to the issue the government raised with regards to analogs being divisible from cocaine in Section 401 in Illinois Statutes, 401C2. There's no Supreme Court opinion squarely on point. What we can do then is we look at other shepherd documents. So we have the jury instructions, which is at appendix page 46, where the state of Illinois has said that in certain circumstances, you're trying to prove up an analog and you replace the phrase controlled substance with the phrase controlled substance or a controlled substance analog. And so right there, it's saying the jury could find either one. It doesn't have to be unanimous on whether it was cocaine or an analog thereof. The difference is material. I spelled that out in my brief. But there are – it's a conjunctive test in the federal law and disjunctive in state law. You have one minute left. Well, last, Your Honor, I'd like to point out that nothing here is saying that Mr. Ruth would be innocent of his underlying charges. And nothing here is saying that the judge wouldn't be able to look at his prior conviction and say, hey, you know what, maybe technically it's overbroad, but it still looks like you were dealing drugs previously. I'm going to vary upwards. And indeed, in Garcia, this court said, look, you're not going to be unaccountable for it. And we're pointing out this could be a 3553A factor. And I think that's important to remember here. All we're talking about is discretion of the judges and whether the minimums or, in this case, maximum will be raised. Unless the court has any questions, I have nothing further. All right. Thank you. And our thanks to both counsel. The case is taken under advisement.